# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | | |
|---|---|---|
| NATIONAL BEEF LEATHERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:11-CV-04004-NKL |
| | ) | |
| PRIME TANNING CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF NATIONAL BEEF LEATHERS, LLC'S SUGGESTIONS IN SUPPORT OF ITS MOTION FOR MANDATORY ABSTENTION AND REMAND AND SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE

Kirsten A. Byrd
Derek T. Teeter
Gavin L. Smith
Benjamin F. Mann
Keron A. Wright
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112

**ATTORNEYS FOR PLAINTIFF, NATIONAL BEEF LEATHERS, LLC**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

I.      INTRODUCTION ............................................................................................................1

II.     STATEMENT OF FACTS ...............................................................................................2

III.    PROCEDURAL HISTORY ..............................................................................................3

IV.     STATEMENT OF ISSUES ..............................................................................................5

V.      SUMMARY OF ARGUMENT ........................................................................................6

        A.      As To Mandatory Abstention ...............................................................................6

        B.      As To Remand On Equitable Grounds .................................................................6

        C.      As To Defendants' Transfer Motion .....................................................................7

VI.     ARGUMENT ....................................................................................................................7

        A.      Order Of Analysis .................................................................................................7

        B.      Mandatory Abstention ..........................................................................................8

                1.      Mandatory Abstention in a Removed Case ...............................................8

                2.      Elements for Mandatory Abstention .........................................................9

                        (a)     NBL's motion is timely ................................................................ 10

                        (b)     The claims and counterclaims are state law claims ..................... 11

                        (c)     The claims are non-core claims .................................................... 11

                        (d)     Jurisdictional basis ....................................................................... 20

                        (e)     The action commenced in state court............................................ 20

                        (f)     The action can be timely adjudicated............................................ 21

        C.      Remand Under Section 1452(b)...........................................................................22

        D.      Transfer Of Venue And Factors In Determining ...............................................24

                1.      Transfer is Not Triggered Under 28 U.S.C. § 1334(e) .............................24

                2.      No Authority for Transfer Under 28 U.S.C. § 1412 .................................24

                3.      No Authority for Transfer Under 28 U.S.C. § 1404(a)..............................26

                4.      Factors in Determining Whether to Transfer Venue, Assuming
                        Transfer Authority .....................................................................................27

VII.    CONCLUSION................................................................................................................29

CERTIFICATE OF SERVICE ...............................................................................................31

# TABLE OF AUTHORITIES

**Page**

**State Cases**

AG Indust., Inc. v. AK Steel Corp.,
    279 B.R. 534 (Bankr. S.D. Ohio 2002)................................................................. 7, 16, 17, 18

Allen v. J.K. Harris & Co., LLC,
    331 B.R. 634 (E.D. Pa. 2005) ................................................................................. 10

AUSA Life Ins. Co., Inc. v. Citigroup, Inc.,
    293 B.R. 471 (N.D. Iowa 2003)............................................................................. 9

Bowen Corp., Inc. v. Sec. Pac. Bank Idaho,
    150 B.R. 777 (Bankr. D. Idaho 1993)..................................................................... 21

C&A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth.,
    369 B.R. 87 (D. P.R. 2007).................................................................................... 12

C&B, LLC v. Grubbs Emergency Serv., Inc.,
    305 B.R. 476 (Bankr. W.D. Ark. 2003).................................................................. 8

DeGirolamo v. Applegate,
    414 B.R. 209 (Bankr. N.D. Ohio 2008) .................................................................. 10

Delay v. Rosenthal Collins Group, LLC,
    585 F.3d 1003 (6th Cir. 2009) ................................................................................ 26

Frelin v. Oakwood Homes Corp.,
    292 B.R. 369 (Bankr. E.D. Ark. 2003) ................................................................... 7

Gabel v. Engra, Inc.,
    86 B.R. 890 (S.D. Tex. 1988) ................................................................................. 7

Gehan Properties II, Ltd. v. Integrated Performance Sys., Inc.,
    2007 WL 2088281 (Bankr. N.D. Tex. July 19, 2007) ............................................ 10

Halper v. Halper,
    164 F.3d 830 (3d Cir. 1999) ................................................................................... 12

Hicklin Eng'g L.C. v. Bartell,
    439 F.3d 346 (7th Cir. 2006) .................................................................................. 26

In re Bruno's,
    227 B.R. 311 (N.D. Ala. 1998)............................................................................... 25

In re Burger Boys, Inc.,
    183 B.R. 682 (S.D. N.Y. 1994)................................................................... 13, 14, 20

In re Delaware & Hudson Ry. Co.,
    122 B.R. 887 (D. Del. 1991) ................................................................................... 13

In re Equator Corp.,
    2007 WL 3119679 (Bankr. S.D. Tex. Oct. 22, 2007)....................................... 16, 18

Case 2:11-cv-04004-NKL   Document 18   Filed 02/03/11   Page 3 of 37

In re Exide Tech.,
  544 F.3d 196 (3d Cir. 2008) ............................................................... 12

In re Heritage Southwest Med. Group, P.A.,
  423 B.R. 809 (N.D. Tex. 2010) ........................................................... 22

In re Indian Motorcycle Co., Inc.,
  261 B.R. 800 (B.A.P. 1st Cir. 2001) ........................................ 16, 18, 19

In re Krigel's Inc.,
  263 B.R. 280 (W.D. Mo. 2001) ........................................................... 23

In re Migrad Corp.,
  204 B.R. 764 (B.A.P. 10th Cir. 1997) .................................................. 8, 9

In re Missouri Properties, Ltd.,
  211 B.R. 914 (Bankr. W.D. Mo. 1996) ................................................... 9

In re Nat'l Century Fin. Enter., Inc., Inv. Litig.,
  323 F. Supp. 2d 861 (S.D. Ohio 2004) ............................................ 21, 22

In re Newcomb,
  744 F.2d 621 (8th Cir. 1984) ......................................................... 14, 15

In re NTA, LLC,
  380 F.3d 523 (1st Cir. 2004) ............................................................... 15

In re Pacor, Inc.,
  72 B.R. 927 (Bankr. E.D. Pa. 1987), aff'd 86 B.R. 808 (E.D. Pa. 1988) .............. 10

In re Refco, Inc. Sec. Litig.,
  628 F. Supp. 2d 432 (S.D. N.Y 2008) .................................................... 21

In re Refco, Inc.,
  354 B.R. 515 (B.A.P. 8th Cir. 2006) ..................................................... 23

In re Scanware, Inc.,
  411 B.R. 889 (Bankr. S.D. Ga. 2009) .................................................... 24

In re SOL, LLC,
  419 B.R. 498 (Bankr. S.D. Fla. 2009) ................................................... 24

In re Touch Am. Holdings, Inc.,
  401 B.R. 107 (Bankr. D. Del. 2009) .................................................. 16, 19

In re TVR of Am., Inc.,
  123 B.R. 159, 162 (D. Conn. 1991) ...................................................... 13

In re Warren Producers, Inc.,
  358 B.R. 717 (Bankr. W.D. Ky. 2007) ................................................... 16

In re Williams,
  256 B.R. 885 (B.A.P. 8th Cir. 2001) ..................................................... 12

Lead I JV v. North Fork Bank,
  401 B.R. 571 (E.D. N.Y. 2009) ........................................................... 21

Lennar Corp. v. Briarwood Capital, LLC,
    430 B.R. 253 (Bankr. S.D. Fla. 2010) ............................................................ 7, 22

Lone Star Indust., Inc. v. Liberty Mut. Ins.,
    131 B.R. 269 (D. Del. 1991) ............................................................................ 7

Lothian Cassidy LLC v. Ransom,
    428 B.R. 555 (E.D.N.Y. 2010) ........................................................................ 8

Maryland Cas. Co. v. Aselco, Inc.,
    223 B.R. 217 (D. Kan. 1998) .......................................................................... 7

Massey Energy Co. v. West Virginia Consumers for Justice,
    351 B.R. 348 (E.D. Va. 2006) ........................................................................ 21

Ni Fuel Co., Inc. v. Jackson,
    257 B.R. 600 (N.D. Okla. 2000) ................................................................... 7, 25

Northern Pipeline Constr. Co. v. Marathon Line Co.,
    458 U.S. 50 (1982) ......................................................................................... 13

Novak v. Lorenz, et al.,
    116 B.R. 626 (Bankr. N.D. Ill. 1990) ............................................................ 10

Official Committee of Omniplex Comm. Group, LLC v. Lucent Tech., Inc.,
    344 F. Supp. 2d 1194 (E.D. Mo. 2004) .......................................................... 9

OnePoint Solutions, LLC v. Borchert,
    486 F.3d 342 (8th Cir. 2007) ......................................................................... 26

Peterson v. 610 West 142 Owners Corp.,
    219 B.R. 363 (Bankr. S.D. N.Y. 1999) .......................................................... 13

Rumore v. Wamstad,
    No. 01-2997, 2001 WL 1426680 (E.D. La., Nov. 13, 2001) .......................... 25

Stoe v. Flaherty,
    436 F.3d 209 (3d Cir. 2006) ..................................................................... 8, 9, 21

Taub v. Taub,
    413 B.R. 69 (Bankr. E.D. N.Y. 2009) ........................................................... 10

Terra Int'l, Inc. v. Mississippi Chem. Corp.,
    119 F.3d 688 (8th Cir. 1997) ...................................................................... 27, 28

Trans World Airlines, Inc. v. Icahn,
    278 B.R. 42 (Bankr. D. Del. 2002) ................................................................ 10

Tultex Corp. v. Freeze Kids, L.L.C.,
    252 B.R. 32 (S.D.N.Y. 2000) ......................................................................... 25

WRT Creditors Liquidation Trust v. Oppenheimer Corp.,
    75 F. Supp. 2d 596 (S.D. Tex. 1999) ............................................................. 13

**Federal Regulations**

28 U.S.C. § 157(a) ............................................................................ 12

28 U.S.C. § 157(b) ............................................................................ 12

11 U.S.C. § 505 ................................................................................ 19

11 U.S.C. § 541 ................................................................................ 14

11 U.S.C. § 549 ................................................................................ 18

28 U.S.C. § 1332(a)(1) ...................................................................... 20

28 U.S.C. § 1332(c)(1) ...................................................................... 26

28 U.S.C. § 1334(b)(2) ...................................................................... 20

28 U.S.C. § 1334(c)(2) ........................................................ 8, 9, 10, 13, 22

28 U.S.C. § 1334(e) ..................................................................... 17, 24

28 U.S.C. § 1404(a) ............................................................... 7, 25, 26, 27

28 U.S.C. § 1412 .................................................................. 7, 24, 25, 27

28 U.S.C. § 1452(a) ....................................................................... 6, 22

**Other Authorities**

5 Collier on Bankruptcy § 541.09[1] 5th ed. ..................................... 14

**PLAINTIFF NATIONAL BEEF LEATHERS, LLC'S
SUGGESTIONS IN SUPPORT OF ITS MOTION FOR MANDATORY
ABSTENTION AND REMAND AND SUGGESTIONS
IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**

Plaintiff, National Beef Leathers, LLC ("NBL"), hereby submits its suggestions in support of Plaintiff National Beef Leathers, LLC's Motion For Mandatory Abstention And Remand ("NBL's Abstention/Remand Motion") (Doc. 17) and in opposition to Defendants' Motion To Transfer Venue (Doc. 5) ("Defendants' Transfer Motion").

## I.    INTRODUCTION

This state law breach of contract action, now removed to this Court by Defendants, is before the Court for consideration of two related motions:  NBL's Abstention/Remand Motion and Defendants' Transfer Motion.  For the reasons discussed in detail below, NBL's motion should be granted; and, if reached by the Court on the merits, Defendants' motion should be denied.

In short, the Court should abstain from exercising its "related to" concurrent jurisdiction and remand this action to the state court in which it was brought, because all of the elements that are required for application of the doctrine of mandatory abstention are present.  However, if the Court should determine to exercise its jurisdiction over this matter, it should decline to transfer this action to the federal district court in Maine, in that there is no statutory authority for transfer and, even assuming statutory authority, the factors in determining the motion weigh against transfer.

## II.    STATEMENT OF FACTS

The facts relevant to the issues raised by the motions addressed in this brief are NBL's allegations against Defendants as set forth in NBL's Petition, as follows.

Plaintiff NBL and Defendant Prime Tanning Corp. ("Missouri Prime") entered into an Asset Purchase Agreement ("APA") under which NBL purchased from Missouri Prime a leather tanning facility located in St. Joseph, Missouri ("the Tannery") and other assets.  Petition at ¶¶ 6-8 (Doc. 1-1).

Within weeks of purchasing the Tannery, NBL (along with Missouri Prime and others) was named as a defendant in a civil lawsuit involving claims for personal injury and wrongful death from alleged exposure to wastewater treatment sludge that had been generated in the Tannery operations and which had been land-applied to area fields as a fertilizer product (the "Fertilizer Sludge").  NBL was ultimately named as a defendant in 19 civil actions involving similar allegations about the Tannery operations and alleged exposure to Fertilizer Sludge (the "Lawsuits").  NBL was also required to respond to numerous requests for information by various governmental agencies and entities (the "Government Investigations").  The Lawsuits and the Government Investigations required NBL to collect, preserve, and produce thousands of documents related to Missouri Prime's operation of the Tannery.  Furthermore, NBL was forced to delay its planned substantial renovation of the Tannery and to incur additional costs in making alternate disposal of the Fertilizer Sludge.  Petition at ¶¶ 18, 20, 24-41 (Doc. 1-1).

NBL ultimately prevailed in the Lawsuits, but incurred millions of dollars in unanticipated expenses in defending the Lawsuits, responding to the Government Investigations, and in altering its business plans in light of these proceedings.  Virtually all of these expenses

incurred by NBL are attributable to Missouri Prime's operation of the Tannery before NBL purchased it.  Petition at ¶¶ 42-49 (Doc. 1-1).

Pursuant to the terms of the APA, NBL sought indemnity from Missouri Prime and Defendant Prime Tanning Company, Inc. ("Delaware Prime"), Missouri Prime's corporate grandparent and a contractual guarantor to Missouri Prime.  That effort was unsuccessful. Petition at ¶¶ 49, 50, 64 (Doc. 1-1).  On September 13, 2010, NBL filed this action in the Circuit Court of Cole County, Missouri (the "State Court") against Missouri Prime and Delaware Prime for breach of contract and declaratory judgment.  Petition (Doc. 1-1).

### III.    PROCEDURAL HISTORY

The procedural history of this action relevant to the issues raised by the motions addressed in this brief is as follows.

NBL alleges that under the APA, Missouri Prime and Delaware Prime (as contractual guarantor) are obligated to indemnify NBL for all costs that NBL incurred in defending the Lawsuits, in responding to the Government Investigations, and in altering its business plans in light of the Lawsuits and the Government Investigations.  NBL further alleges that all of these costs are "retained liabilities" under the APA because they "relate to the Assets, the Business, [and] the historical operations" of the Tannery.  NBL alleges the refusal to indemnify constitutes breaches of the APA and related Guaranty.  Id. at ¶¶ 58-73.

NBL's alleged damages include:  (1) approximately $1.5 million that NBL incurred in defending the Lawsuits and approximately $80,000 that NBL incurred in defending a Tannery employee, through separate counsel, in the Lawsuits; (2) approximately $80,000 per month in past and future expenses NBL has incurred in making alternate disposal of Fertilizer Sludge; (3) approximately $30,000 per week in above-routine operating expenses and an additional

$2.2 million per week in lost profits caused by the unanticipated delay in NBL's planned renovation of the Tannery; (4) approximately $875,000 in costs NBL incurred in responding to the Government Investigations; and (5) approximately $1.1 million in costs NBL incurred in collecting, preserving, and producing Missouri Prime documents and Missouri Prime electronically stored information in connection with the Lawsuits and the Government Investigations. Id. at ¶¶ 44-49.

In total, NBL seeks to recover from Missouri Prime and Delaware Prime: (1) approximately $1.5 million of the purchase price for the Tannery, held under the terms of the APA and a related Escrow Agreement by an escrow agent in Missouri (the "Escrow Funds") and (2) money damages in excess of the Escrow Funds.

Missouri Prime asserted a counterclaim against NBL for breach of contract and declaratory judgment. Defendants' Answer/Counterclaim (Doc. 1-2). Missouri Prime admits that NBL is entitled to indemnification, but contends that NBL breached the APA by failing to submit a timely Notice of Claim, failing to tender defense of the Lawsuits and the responses to the Government Investigations to Missouri Prime, and failing to provide to Missouri Prime access to records and employees of the Tannery for purposes of Missouri Prime's defense of the underlying Lawsuits. Id. NBL disputes these claims and contends it was under no obligation to tender its defense to Missouri Prime because the parties' interests in the Lawsuits and Government Investigations were not completely aligned and because Missouri Prime failed to provide NBL reasonable assurance of its financial capacity to fully defend NBL in the Lawsuits and Government Investigations. NBL's Answer To Defendant Prime Tanning Corp.'s Counterclaim (Doc. 1-5).

All of the claims and counterclaims by the parties are controlled by Missouri law. These claims implicate witnesses located in Missouri, particularly the parties' respective attorneys that handled the underlying Lawsuits and Government Investigations, and documents and other evidence in Missouri.

On November 16, 2010, Missouri Prime filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Maine (the "Maine Bankruptcy Court"). (Doc. 1-6). On December 30, 2010, Delaware Prime filed a Chapter 11 bankruptcy case in Maine Bankruptcy Court. (Doc. 1-6). On January 4, 2011, Defendants filed a Notice Of Removal (Doc. 1) and Defendants' Transfer Motion (Doc. 5), seeking to transfer venue to the United States District Court for the District of Maine in Bangor, Maine (the "Maine District Court"), which would cause this matter to be referred in turn to the Maine Bankruptcy Court based upon the contention that the Escrow Funds are part of Missouri Prime's bankruptcy estate (the "Bankruptcy Estate").

NBL opposes removal of this case from the State Court and transfer of this case to the Maine Bankruptcy Court. Accordingly, NBL has filed NBL's Abstention/Remand Motion (Doc. 17), and now submits these suggestions in support of that motion and in opposition to Defendants' Transfer Motion.

## IV.    STATEMENT OF ISSUES

The issues presented to the Court for resolution in connection with the motions addressed in this brief are: (1) whether the Court should remand the case to the State Court, under the doctrine of mandatory abstention or pursuant to the Court's equitable discretion to remand, and (2) if the case is not remanded, whether the Court has authority to transfer this case to the Maine District Court and, if so, whether Defendants have established by a preponderance of the

evidence that transfer is in the interest of justice and serves the convenience of the parties and witnesses.

## V.    <u>SUMMARY OF ARGUMENT</u>

### A.    <u>As To Mandatory Abstention</u>

The Court must abstain from and remand this action because the elements of mandatory abstention are satisfied.  Under the doctrine of mandatory abstention, a federal district court must abstain from exercising its concurrent jurisdiction over a matter where: there is a timely motion; the claims are state law claims; the claims are non-core claims; the action could not have been brought in federal court other than under "related to" jurisdiction; the action was commenced in state court; and the action can be timely adjudicated in state court.

Defendants' contention that mandatory abstention is not applicable is based only on their assertion that the Escrow Funds are property of the Bankruptcy Estate and that this action therefore is a core proceeding.  The law in this area, though, establishes that prepetition contract claims are merely "related to" a bankruptcy case and thus are <u>not</u> core proceedings. Accordingly, as all the elements for mandatory abstention are satisfied, this Court must abstain from hearing this action and remand this case to the State Court.

### B.    <u>As To Remand On Equitable Grounds</u>

Even if the Court determines that mandatory abstention in this case is not appropriate, remand is necessary under 28 U.S.C. § 1452(a) because:  the effect of removal on the Bankruptcy Estate would be minimal; state law issues dominate this action; there is no related proceeding dealing with these contract issues before the Maine Bankruptcy Court; there is no other jurisdictional basis for federal court jurisdiction other than "related to" jurisdiction; NBL has a right to a jury trial; there are no core proceedings before the court; and comity weighs in

favor of remand. Because the relevant factors weigh in favor of equitable remand, this Court should in any event remand this action to the State Court.

### C. As To Defendants' Transfer Motion

The Court does not have authority to transfer this case to the Maine District Court. First, 28 U.S.C. § 1412 does not apply because this lawsuit, which involves state-law claims for breach of contract and declaratory judgment, is not "a case or proceeding under title 11." Second, 28 U.S.C. § 1404(a) does not apply because this case could not have been brought in the Maine District Court due to lack of federal subject matter jurisdiction. Finally, even if 28 U.S.C. § 1412 and/or § 1404(a) apply, the statutory factors in determining a motion to transfer venue weigh against transfer.

## VI. ARGUMENT

### A. Order Of Analysis

Issues involving the Court's jurisdiction must be resolved before the Court can consider venue issues. Lennar Corp. v. Briarwood Capital, LLC, 430 B.R. 253, 261 (Bankr. S.D. Fla. 2010). Therefore, the Court must first determine whether the doctrine of mandatory abstention applies. Second, the Court must determine whether the action should be remanded. Third, the Court must determine whether the case should be transferred. See Frelin v. Oakwood Homes Corp., 292 B.R. 369, 380 (Bankr. E.D. Ark. 2003); AG Indust., Inc. v. AK Steel Corp., 279 B.R. 534 (Bankr. S.D. Ohio 2002); see also Ni Fuel Co., Inc. v. Jackson, 257 B.R. 600 (N.D. Okla. 2000); Maryland Cas. Co. v. Aselco, Inc., 223 B.R. 217 (D. Kan. 1998); Lone Star Indust., Inc. v. Liberty Mut. Ins., 131 B.R. 269 (D. Del. 1991); Gabel v. Engra, Inc., 86 B.R. 890 (S.D. Tex. 1988).

If the Court finds that mandatory abstention applies, it should remand the case to the State Court. Only if the Court determines that mandatory abstention is inapplicable and that remand on equitable grounds is not required should it reach the issue of whether transfer to the Maine District Court is proper. See, e.g., Lothian Cassidy LLC v. Ransom, 428 B.R. 555, 558 (E.D.N.Y. 2010); C&B, LLC v. Grubbs Emergency Serv., Inc., 305 B.R. 476 (Bankr. W.D. Ark. 2003) (following this order of analysis).

### B. Mandatory Abstention

28 U.S.C. § 1334(c)(2) provides:

> Upon a timely motion of a party in a proceeding based upon a State law claim or a State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Section 1334(c)(2) is the statutory basis for the doctrine of mandatory abstention, under which a bankruptcy court must abstain from exercising jurisdiction if certain factors are satisfied.

In Section B.1. below, NBL will show that mandatory abstention applies equally to removed cases as to cases originally filed in the bankruptcy courts or district courts pursuant to bankruptcy court jurisdiction. In Section B.2., NBL will show that the six requisite elements for mandatory abstention are satisfied.

### 1. Mandatory Abstention in a Removed Case

Although there is some authority indicating that because a removed action is no longer pending in the state court, the federal court would have nothing from which to abstain, it is widely accepted that the doctrine of mandatory abstention does apply in removed cases. See Stoe v. Flaherty, 436 F.3d 209, 219 (3d Cir. 2006); In re Migrad Corp., 204 B.R. 764, 774

(B.A.P. 10th Cir. 1997); <u>Official Committee of Omniplex Comm. Group, LLC v. Lucent Tech., Inc.</u>, 344 F. Supp. 2d 1194, 1198 (E.D. Mo. 2004); <u>AUSA Life Ins. Co., Inc. v. Citigroup, Inc.</u>, 293 B.R. 471, 478 (N.D. Iowa 2003) (reasoning that the mandatory abstention requirement is that an action is commenced in state court rather than it be pending in state court).

In <u>Stoe v. Flaherty</u>, the court conducted a lengthy analysis in which it found that mandatory abstention applies in removed cases. In doing so, the court observed that an ongoing proceeding is not necessary for mandatory abstention; nor does the language of Section 1334 provide for an ongoing proceeding. Instead, Section 1334 simply requires that an action "is commenced" in state court. According to the court, the phrase "is commenced" does not require both commencement and ongoing pendency. 436 F.3d at 213-14.

### 2. Elements for Mandatory Abstention

In order to find that abstention is mandatory under Section 1334(c)(2) , each of the following elements must be present: (1) a timely motion is made; (2) the claim or cause of action is based upon state law; (3) the claim or cause of action is a non-core proceeding; (4) the only basis for jurisdiction is bankruptcy jurisdiction; (5) the action was commenced in state court; and (6) the action can be timely adjudicated in state court. <u>In re Missouri Properties, Ltd.</u>, 211 B.R. 914, 920 (Bankr. W.D. Mo. 1996). Here, the elements are present and require mandatory abstention.

NBL's Abstention/Remand Motion is timely. All the claims and counterclaims in this action are state law claims. There is no diversity or federal question jurisdiction. The action was commenced in state court. And the state court can timely adjudicate the state law matters.

Defendants contend in their Transfer Motion only that the removed case is a core proceeding, asserting only that the Escrow Funds are property of the Bankruptcy Estate.

However, in fact, the Escrow Funds are <u>not</u> property of the Bankruptcy Estate. Thus, this is not a core proceeding that precludes mandatory abstention.

(a)     <b><u>NBL's motion is timely</u></b>

The first element for mandatory abstention is that the motion is timely. Neither Section 1334(c)(2) nor the Federal Rules of Bankruptcy Procedure provide any guidance as to what is a timely motion. While case law regarding this element is limited, most courts that have addressed this element have concluded that whether a motion for mandatory abstention is timely is a "flexible, case-specific" determination. <u>See</u>, <u>e.g.</u>, <u>Taub v. Taub</u>, 413 B.R. 69, 76 (Bankr. E.D. N.Y. 2009). Thus, "[w]hether a motion [for mandatory abstention] is timely filed depends upon a variety of factors including whether the granting of a motion would prejudice or delay the rights of others." <u>Gehan Properties II, Ltd. v. Integrated Performance Sys., Inc.</u>, 2007 WL 2088281, at * 3 (Bankr. N.D. Tex. July 19, 2007) (citing <u>In re Pacor, Inc.</u>, 72 B.R. 927, 932 (Bankr. E.D. Pa. 1987), <u>aff'd</u> 86 B.R. 808 (E.D. Pa. 1988)). "[T]imeliness appears to turn on the stage of the litigation and its procedural history rather than on the mere ticking of the clock." <u>DeGirolamo v. Applegate</u>, 414 B.R. 209, 214 (Bankr. N.D. Ohio 2008) (citing <u>Novak v. Lorenz, et al.</u>, 116 B.R. 626, 628 (Bankr. N.D. Ill. 1990)).

In this case, NBL filed its Abstention/Remand Motion only 30 days after Defendants' Notice Of Removal, making this motion timely. <u>See</u>, <u>e.g.</u>, <u>Allen v. J.K. Harris & Co., LLC</u>, 331 B.R. 634, 642 (E.D. Pa. 2005) (motion was timely filed where party moved for abstention as soon as possible after learning the grounds for such motion and moved within 30 days of remand); <u>Trans World Airlines, Inc. v. Icahn</u>, 278 B.R. 42, 50 (Bankr. D. Del. 2002) (motion for mandatory abstention timely when filed 37 days after adversary proceeding was filed).

**(b)**      <u>The claims and counterclaims are state law claims</u>

In this action, NBL seeks damages for breach of contract against Missouri Prime, breach of contract against Delaware Prime, and declaratory relief. Missouri Prime's counterclaims are for breach of contract and declaratory relief. All these claims are based on Missouri state contract and common law. Moreover, the APA, the Escrow Agreement, and the Guaranty Agreement all provide that Missouri law controls in any interpretation of the documents.

**(c)**      <u>The claims are non-core claims</u>

The third element of mandatory abstention requires the Court to determine whether the state law claims are within the core or non-core jurisdiction of a bankruptcy court. If the claims are core, then mandatory abstention is not applicable. If, on the other hand, the claims are non-core, and the requirements for mandatory abstention are satisfied, then this Court must abstain from the exercise of jurisdiction.

To determine if claims are core or non-core, the Court must look to Section 1334. Under that provision, bankruptcy courts have jurisdiction over cases under Title 11, claims arising under Title 11, claims arising in a case under Title 11, and claims "related to" a case under Title 11.[1] Proceedings under Title 11, proceedings that arise under Title 11, and proceedings that arise in a case under Title 11 are core proceedings to which a bankruptcy court has exclusive

---

[1] Section 1334(a) and (b) provides:

     a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

     b) Except as provided in subsection (e)(2), and notwithstanding an Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

jurisdiction.  See 28 U.S.C. § 157(a) & (b) .  However, a bankruptcy court does not have exclusive jurisdiction in "related to" cases.

This is obviously not a case under Title 11.  It is not a bankruptcy case.

The term "'arising under' applies to proceedings that involve causes of action expressly created or determined by title 11."  In re Williams, 256 B.R. 885, 891 (B.A.P. 8th Cir. 2001). These include actions to recover fraudulent conveyances or avoidance actions.  This is not such an action.

"'[A]rising in' generally refers to administrative matters that, although not expressly created by title 11, would have no existence but for the fact that a bankruptcy case was filed." Id. at 891.  Again, this is not such an action.

A claim is considered a core proceeding "'if (1) it invokes a substantive right provided by title 11 or (2) it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'"  In re Exide Tech, 544 F.3d 196, 206 (3d Cir. 2008) (quoting Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999)).  On the other hand, a non-core proceeding is one where "'the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"  Id.; In re Williams, 256 B.R. at 891; C&A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth., 369 B.R. 87, 91 (D. P.R. 2007).

NBL's claims for breach of contract and for declaratory judgment and Missouri Prime's counterclaims for breach of contract and declaratory judgment do not "arise under" Title 11 because they are not causes of action created by Title 11; and they do not arise in a case under Title 11 because the claims could, and did, in fact, exist without a bankruptcy case.  The claims and counterclaims, however, are "related to" a bankruptcy case because the claims and counterclaims will have some effect on the administration of the Bankruptcy Estate.  That is,

Defendants may be liable to NBL, reducing the estate assets, or Missouri Prime may be awarded a judgment, increasing the estate assets. See WRT Creditors Liquidation Trust v. Oppenheimer Corp., 75 F. Supp. 2d 596, 609 (S.D. Tex. 1999) (reasoning that a prepetition contract claim based on state law is a non-core proceeding); In re Delaware & Hudson Ry. Co., 122 B.R. 887, 894 (D. Del. 1991) (same); In re TVR of Am., Inc., 123 B.R. 159, 162 (D. Conn. 1991) (same); Peterson v. 610 West 142 Owners Corp., 219 B.R. 363, 370 (Bankr. S.D. N.Y. 1999) (same).

In re Burger Boys, Inc., 183 B.R. 682 (S.D. N.Y. 1994) illustrates why this case should be treated as a non-core proceeding. Burger Boys entered into a long-term lease agreement with South Street Seaport. After Burger Boys failed to make rent payments, South Street Seaport commenced a non-payment action in New York City Civil Court. Burger Boys asserted six counterclaims, claiming that South Street Seaport had breached the contract by abandoning the premises. Prior to judgment, Burger Boys filed for bankruptcy and then filed an adversary proceeding against South Street Seaport raising the six counterclaims. South Street Seaport moved for mandatory abstention.

The bankruptcy court held that the adversary proceeding was non-core and granted South Street Seaport's motion for mandatory abstention. Burger Boys appealed, claiming that the adversary proceeding was a core proceeding under Section 1334(c)(2). Relying on Northern Pipeline Constr. Co. v. Marathon Line Co., 458 U.S. 50, 102 (1982), the district court determined that the adversary proceeding was a non-core proceeding because the claims were prepetition breach of contract claims. That court observed that a claim is not core just because proceeds from the claim would inure to the benefit of the estate. Rather, "where, as here, the 'property of the estate' (the breach proceeds and Burger Boy's rights under the lease) is conditional upon the debtor prevailing in the adversary proceeding, courts have consistently held the adversary

proceeding is noncore." In re Burger Boys, Inc., 183 B.R. at 686. Thus, upon concluding that prepetition breach of contract claims are non-core proceedings, the district court affirmed the bankruptcy court's decision.

Defendants attempt to categorize this case as a core proceeding, relying exclusively on the erroneous premise that the Escrow Funds are property of the Bankruptcy Estate. 11 U.S.C. § 541 provides that "all legal and equitable interest of the debtor in property as of the commencement of the case" is property of the bankruptcy estate. The clear rule on whether escrow funds are property of the estate is that, if the funds are in a valid escrow account, the funds, themselves, are not property of the bankruptcy estate. See 5 Collier on Bankruptcy § 541.09[1] 5th ed. Here, there is no dispute that the Escrow Funds are in a validly executed escrow account held by a third-party, United Missouri Bank, and can only be released upon satisfaction of the stipulated conditions.

Case law from both the Eighth and First Circuits supports the conclusion that the Escrow Funds are not property of the Bankruptcy Estate. For example, in In re Newcomb, 744 F.2d 621 (8th Cir. 1984), the Farmers Home Administration ("FHA") obtained a judgment against Newcomb and entered into an escrow agreement for Newcomb to pay the amount of the judgment into the escrow account pending appeal. The escrow agent was to pay the money to the FHA if the judgment was affirmed on appeal and to Newcomb if the judgment was reversed. The judgment was affirmed and Newcomb quickly filed for bankruptcy. Newcomb's trustee then sued the FHA claiming that because the judgment was affirmed just days before the bankruptcy petition, the funds constituted a preferential transfer of bankruptcy assets. The bankruptcy court and the district court agreed with the trustee, but the Eighth Circuit reversed and observed:

> When the escrow involved in this case was created the interest transferred to FHA was a contingent right to the escrowed funds, that is, a right to the funds if the court affirmed the judgment for the United States. The interest left in Newcomb by this transfer was a contingent right to the escrowed funds if this court reversed judgment for the United States . . . . Once the escrow was created, the only interest in the escrowed funds remaining in the debtor was a contingent right to the funds . . . .

Id. at 626-27.

Similarly, in In re NTA, LLC, 380 F.3d 523 (1st Cir. 2004), prior to filing bankruptcy, the debtor placed into escrow its membership interests and could not obtain them until complying with various requirements to the lender. The debtor then filed bankruptcy and sought to have the membership interests declared property of the bankruptcy estate. Both the bankruptcy court and the district court found that the membership interests were not property of the estate and further found that under the terms of the escrow agreement that the membership interests should be delivered to the lender. The First Circuit affirmed the lower court's decision, stating:

> Our holding that membership interests are not part of NTA's bankruptcy estate is consistent with the treatment given by other courts to property placed in escrow prior to a party filing bankruptcy . . . . In general, an estate holds only the same contingent rights to the escrowed property that the debtor held prior to filing for bankruptcy.

Id. at 531.

In this case, the Escrow Funds are not property of Missouri Prime's Bankruptcy Estate. Missouri Prime merely has a contingent claim to the Escrow Funds, the only right that became property of the Bankruptcy Estate under Section 541. In fact, unlike NTA and Newcomb, the Escrow Funds were never property belonging to Missouri Prime. Upon executing the Escrow Agreement, NBL placed certain of its funds into escrow to serve as protection if Missouri Prime breached the APA.

Defendants rely on the following cases as purported support for their claim that the Escrow Funds are property of the Bankruptcy Estate: In re Warren Producers, Inc., 358 B.R. 717 (Bankr. W.D. Ky. 2007); AG Indus. v. AK Steel Corp., 279 B.R. 534 (Bankr. S.D. Ohio 2002) , In re Equator Corp., 2007 WL 3119679 (Bankr. S.D. Tex. Oct. 22, 2007), In re Indian Motorcycle Co., Inc., 261 B.R. 800 (B.A.P. 1st Cir. 2001), and In re Touch Am. Holdings, Inc., 401 B.R. 107 (Bankr. D. Del. 2009).

All of these cases are readily distinguishable.

First, In re Warren Producers, Inc. is distinguishable because the property at issue in that case was the operation of certain oil wells that had been transferred prepetition to the debtor. The court denied remand because the property at issue — the right to operate the wells — was property of the bankruptcy estate. Because the plaintiff in the state court was one of the creditors that placed the debtor into bankruptcy, the court reasoned that such plaintiff should have foreseen that the case would be removed to bankruptcy court. In re Warren Producers, Inc., 358 B.R. at 720.

In this case, Missouri Prime has only a contingent claim to a right to receive the Escrow Funds. This contingent claim is all that is a part of the Bankruptcy Estate, and there is no controversy as to whether Missouri Prime has that claim. In contrast, in Warren Producers, the property interest at issue was the debtor's right to operate the oil and gas wells.

Second, Defendants' reliance on AG Indust. is misplaced because the case, in fact, stands for the proposition that prepetition contract claims are not core proceedings — as NBL contends. In AG Indust., the bankruptcy court determined that the state law causes of actions fell outside of the exclusive jurisdiction of the bankruptcy court and remanded the case to state court. The plaintiff in AG Indust., sued the debtors in Ohio state court based on breach of contract and

deficient work performance. The debtors filed counterclaims in the Ohio action. After the commencement of the bankruptcy case, the plaintiff settled with one defendant, the general contractor. The debtors then claimed that a portion of the settlement amount should go to them based on work performed as a subcontractor and that some of the funds were property of the bankruptcy estate. As a result, the debtors removed the case to the bankruptcy court and the plaintiff sought remand.

The debtors argued that the funds from the settlement were property of the estate based on 28 U.S.C. § 1334(e). The court, however, found that the Ohio state court action was not a core proceeding, but merely a "related to" proceeding under Section 1334. The court found that although the settlement funds might involve money payable to the debtors, the settlement did not affect the nature of the breach of contract claims in the state court action. Id. at 539. The court concluded that the debtors' attempts to make the state court action a turnover action under the Bankruptcy Code failed because the claims in the state court were plainly contract claims different and wholly separate from a claim to ownership of property of the estate. Id. at 539, n.2.

The court in AG Indust. did not conclude that the settlement fund was property of the estate. Rather, the court expressly made clear that the bankruptcy court's jurisdictional reach under Section 1334(e) only extended so far as Section 1334(a) and (b) provided. In other words, a bankruptcy court only has jurisdiction as provided under Section 1334(a) and (b), and, because the state court claims were merely "related to" the bankruptcy case, remand was proper. Id. at 539. Finally, the court stated that even though the settlement fund "may" involve money payable to the debtor, that alone did not make the state court action a core proceeding because the state court action was based on prepetition contract claims. Id. Thus, AG Indust. actually supports

NBL's position that prepetition contract claims in the removed action are not core proceedings and that mandatory abstention on those grounds is required.

Third, the facts and issues in In re Equator Corp., 2007 WL 3119679 (Bankr. S.D. Tex. Oct. 22, 2007) are distinguishable. In that case, the debtor won a judgment prepetition in which he was represented by Steven Frankoff on a contingency basis. The judgment was paid in two installments, and Frankoff agreed to waive his attorney's lien on the first installment and have his fees attach only to the second installment. When the second installment arrived, the parties did not agree on the fee amount, and an action ensued to determine the amount of Frankoff's fees. Before resolution, the debtor filed for bankruptcy; but in violation of the automatic stay, the state court determined the amount of Frankoff's fees and paid those over to him. The trustee sued to recover the money under 11 U.S.C. § 549 as a postpetition transfer.

The court noted that the essence of the trustee's suit was a determination of the amount of Frankoff's lien for attorney's fees on the debtor's judgment proceeds. Id. at *4. In this case, the Escrow Funds, unlike the judgment proceeds in In re Equator Corp., are not property of the estate. Furthermore, the issue to be determined in In re Equator Corp., the validity and amount of Frankoff's attorney's lien in the debtor's judgment proceeds, is expressly a core proceeding pursuant to § 157.

Fourth, the facts in In re Indian Motorcycle Co., Inc., 261 B.R. 800, 808 (B.A.P. 1st Cir. 2001) are totally different from this case. The issue in that case was whether the bankruptcy court erred by ceding jurisdiction to the Colorado district court to determine debtor's tax liability. Id. at 806. The resolution depended on whether the bankruptcy court had core or non-core jurisdiction.

The court barely analyzed the issue, summarily concluding that the determination of the tax liability was a core matter for the bankruptcy court and that ceding jurisdiction was improper. Id. at 808. Underlying the court's conclusion is the proposition that the escrow funds were property of the bankruptcy estate, but the court did not analyze that issue. Instead, it found that the determination of tax liability was a core proceeding under 11 U.S.C. § 505. Id. at 810.

The differences between this case and Indian Motorcycle are readily apparent. The proceeds at issue in Indian Motorcycle arose from the sale of assets of the bankruptcy estate, thus clearly property of the bankruptcy estate. There was no real argument otherwise. Furthermore, there is a specific code section for the determination of tax liability, making that determination a proceeding that "arises under" the Bankruptcy Code and a core matter for resolution. Here, on the other hand, the Escrow Funds were established prepetition and Missouri Prime's contingent claim to any portion of the Escrow Funds depends on state law claims that existed and were asserted before the bankruptcy case was filed.

Finally, in In re Touch Am. Holdings, Inc., 401 B.R. 107, 117 (Bankr. D. Del. 2009) both the trustee and other third parties had filed actions against the debtor's insiders asserting breach of fiduciary duty and mismanagement. The trustee then asserted that the right to sue the insiders belonged exclusively to the estate and sought to enjoin the third parties' suit. The court analyzed the issue of whether a claim against insiders of the debtor belonged to the trustee for the shareholders.

The court cited numerous cases holding that a determination of whether property is property of the estate is a core proceeding. From there, the court concluded that the issue of whether the claims against the insiders were property of the estate is a core proceeding. Id. at 117.

In this case, there is no dispute as to who owns the claims that Missouri Prime has asserted in the Removed Action. Missouri Prime clearly has the right to bring those claims; and those claims are, indeed, property of the Bankruptcy Estate. Resolutions of those claims, however, which are based on Missouri state law and in existence before the bankruptcy filing, are not core proceedings. See Burger Boys, 183 B.R. 682 (S.D. N.Y. 1994).

Defendants' contention that the Escrow Funds are property of the Bankruptcy Estate is incorrect. The Court should hold that this action is not a core proceeding, but a "related to" proceeding under Section 1334.

(d)    **Jurisdictional basis**

The fourth element for mandatory abstention is whether the removed action has some basis for federal jurisdiction other than jurisdiction under Section 1334(b)(2). In other words, if the action could not have been brought in federal court other than under "related to" jurisdiction, mandatory abstention is appropriate. Here, the action could not have been brought in federal court either under federal question jurisdiction or under diversity jurisdiction.

All of the claims asserted by the parties are purely state law claims. There is not, and cannot be, any basis for asserting federal question jurisdiction. Likewise, there is no diversity jurisdiction. In this case, both NBL and Prime Missouri are Missouri citizens. Because there is no complete diversity Section 1332(a)(1) is inapplicable in this action. Therefore, the only basis for federal jurisdiction is "related to" jurisdiction under Section 1334(b).

(e)    **The action commenced in state court**

The fifth element of mandatory abstention is that the action commenced in a state court. NBL filed its Petition against Defendants on September 13, 2010 in the State Court. This element is satisfied.

**(f)    The action can be timely adjudicated**

The final element is that the State Court can timely adjudicate the disputed issues.  When analyzing this element, courts are not primarily concerned with the relative speed of process in state court versus federal court.  Rather, courts analyze this element based on the context of the bankruptcy proceeding.  Stoe v. Flaherty, 436 F.3d 209, 219 (3d Cir. 2006) .  That is, the inquiry the court must make is whether the claims at issue here can be timely adjudicated in the State Court, not whether a federal forum will be faster.  Massey Energy Co. v. West Virginia Consumers for Justice, 351 B.R. 348, 352 (E.D. Va. 2006).

Where the state court action is not part of a complex bankruptcy proceeding, the courts generally find that the issues in the state court action can be timely adjudicated in state court.  CompareLead I JV v. North Fork Bank, 401 B.R. 571, 587 (E.D. N.Y. 2009) (finding that state court could timely adjudicate the plaintiff's six-page complaint for the bank's violation of certain state law statutes, breach of contract, and negligence because the issues were not complex and intertwined with bankruptcy issues) with In re Refco, Inc. Sec. Litig., 628 F. Supp. 2d 432, 446 (S.D. N.Y 2008) (finding that mandatory abstention is not proper where state court actions are intertwined with ongoing bankruptcy proceedings of a complex nature that are dependent on each other); See also In re Nat'l Century Fin. Enter., Inc., Inv. Litig., 323 F. Supp. 2d 861, 883 (S.D. Ohio 2004) (same).  In addition, the fact that the automatic stay may apply to prevent continued litigation in a state forum is not a factor to be considered when determining whether an action can be timely adjudicated in state court.  See Bowen Corp., Inc. v. Sec. Pac. Bank Idaho, 150 B.R. 777, 784 (Bankr. D. Idaho 1993).

In this case, the State Court can effectively and timely adjudicate the state law issues.  First, those issues are not intertwined with ongoing bankruptcy proceedings.  Second, the

proceeding has not yet progressed in the Maine Bankruptcy Court. Third, NBL does not consent to adjudication in the Maine Bankruptcy Court. Fourth, NBL timely demanded a jury trial. Fifth, although the underlying bankruptcy case is a Chapter 11, Missouri Prime has readily admitted that it has no assets to reorganize. See In re Nat'l Century Fin. Enter., Inc., Inv. Litig., 323 F. Supp. 2d at 883 (timely adjudication will present an obstacle if there is an actual ongoing reorganization). Indeed, Missouri Prime's only real asset of the Bankruptcy Estate is its contingent claim to the Escrow Funds. Therefore, in actuality, the Chapter 11 will proceed as a liquidating Chapter 11 as it relates to Missouri Prime. Under these circumstances, the relevant factors indicate that the State Court can timely adjudicate the claims and counterclaims in this action.

### C.  Remand Under Section 1452(b)

Even if the Court determines that mandatory abstention is not required under Section 1334(c)(2), the Court should remand this action on equitable grounds.

Under Section 1452(b), a court may remand an action removed under Section 1452(a) on any equitable grounds. In considering whether to remand a removed action on equitable grounds, a court should consider factors similar to those required for discretionary abstention. Lennar Corp. v. Briarwood Capital, LLC, 430 B.R. 253, 267 (Bankr. S.D. Fla. 2010); In re Heritage Southwest Med. Group, P.A., 423 B.R. 809, 815 (N.D. Tex. 2010). The relevant factors include:

> (1) the effect or lack thereof on the efficient administration of the estate if the court decides to remand or abstain; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy proceeding; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than

> the form of an asserted core proceeding; (8) the feasibility of
> severing state law claims from core bankruptcy matters to allow
> judgments to be entered in state court with enforcement left to the
> bankruptcy court; (9) the burden on the court's docket; (10) the
> likelihood that the commencement of the proceeding in the
> bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial; (12) the presence in the
> proceeding of non-debtor parties; (13) comity; and (14) the
> possibility of prejudice to other parties in the action.

Id. at 815; See also In re Refco, Inc., 354 B.R. 515, 522 n. 30 (B.A.P. 8th Cir. 2006) (listing

similar facts for discretionary abstention); In re Krigel's Inc., 263 B.R. 280, 286 (W.D. Mo.

2001) (same).

Not all factors must be present. Instead, the Court must balance the factors and

determine whether equitable remand is appropriate.

In this case, the balance of factors weighs in favor of remand. First, the effect on the

administration of the Bankruptcy Estate is minimal. Missouri Prime has already admitted that

the Escrow Funds are the only asset it may have. As such, permitting the State Court to continue

its consideration of this action would not affect the administration of the Bankruptcy Estate,

because there is nothing there to administer at this time. Second, state law issues dominate this

removed action, because they are breach of contract claims governed by Missouri law. See In re

Krigel's, Inc., 263 B.R. at 287 (noting that state law issues dominate where the claims are breach

of purchase agreement). Third, there is no related proceeding dealing with these contract issues

before the Maine Bankruptcy Court. Fourth, there is no jurisdictional basis for federal court

jurisdiction other than "related to" jurisdiction. Fifth, NBL has a right to a jury trial, which it has

requested; and the Maine Bankruptcy Court is unable to provide a jury trial. Sixth, there are no

core proceedings before the Court. Seventh, comity weighs in favor of remand: all the issues

are state law issues; almost all witnesses involved in this action are located in Missouri; all the

evidence is located in Missouri; the Tannery that is the subject of these issues is located in Missouri; and all the claims are prepetition contract claims based on contracts entered into in Missouri.

For these reasons, Missouri has a stronger interest in resolution of the claims than the Maine Bankruptcy Court.  The relevant factors in this case weigh in favor of remand.  See, e.g., In re SOL, LLC, 419 B.R. 498, 508-09 (Bankr. S.D. Fla. 2009) (conducting an analysis of the factors and finding that equitable remand was proper); In re Scanware, Inc., 411 B.R. 889, 898-99 (Bankr. S.D. Ga. 2009) (analyzing the factors and finding that they weighed in favor of remand).

**D.      Transfer Of Venue And Factors In Determining**

The Court should deny Defendants' Transfer Motion because the three statutory provisions Defendants cite in support of their motion do not apply to this case and there is no authority for transfer.

**1.      Transfer is Not Triggered Under 28 U.S.C. § 1334(e)**

28 U.S.C. § 1334(e) addresses the exclusive jurisdiction of the bankruptcy court over the property of a debtor's estate.  Defendants' argument that transfer is authorized under Section 1334(e) fails because the Escrowed Funds are not the property of the Bankruptcy Estate.  As shown above in Section B.2.(c), the funds held in the escrow account are not the property of the Bankruptcy Estate.  The Maine Bankruptcy Court does not have exclusive jurisdiction over the Escrowed Funds, and Section 1334(e) therefore does not support transfer.

**2.      No Authority for Transfer Under 28 U.S.C. § 1412**

28 U.S.C. § 1412 authorizes a change in venue in certain situations by providing as follows:  "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412

(emphasis added). Thus, Defendants' argument that transfer is authorized under Section 1412, fails because Section 1412 applies only to "a case or proceeding <u>under</u> title 11," (emphasis added), and not to this civil litigation involving contract-based claims controlled by Missouri law.

The threshold issue to determine whether Section 1412 applies here is whether this is a "case or proceeding under title 11." There is a split in authority on how the phrase "under title 11" should be construed. Some courts construe the phrase broadly to allow for transfer of Title 11 cases <u>and</u> actions "related to" the bankruptcy proceeding. <u>See</u>, <u>e.g.</u>, <u>In re Bruno's</u>, 227 B.R. 311, 323 (N.D. Ala. 1998) (applying Section 1412 to determine a debtor's change of venue motion where the parties did not dispute its application, but holding that the debtor did not prove that transfer was warranted).

Other courts construe the phrase literally and hold that Section 1412 only authorizes transfer of cases "under title 11," and not removed "related to" cases, which instead are only subject to transfer under the general transfer statute, 28 U.S.C. § 1404(a). <u>See</u>, <u>e.g.</u>, <u>Rumore v. Wamstad</u>, No. 01-2997, 2001 WL 1426680, at * 2 (E.D. La., Nov. 13, 2001) (holding that Section 1412 does not authorize transfer of a removed state court action for fraud and to set aside a consent judgment); <u>Tultex Corp. v. Freeze Kids, L.L.C.</u>, 252 B.R. 32 (S.D.N.Y. 2000) (holding that Section 1412 does not authorize transfer of a removed state court action for breach of contract); <u>Ni Fuel Co., Inc. v. Jackson</u>, 257 B.R. 600, 622-23 (N.D. Okla. 2000) (holding that Section 1412 does not authorize transfer of a "related to" proceeding).

This case involves only contract-based claims controlled by Missouri law. Thus this case was <u>not</u> brought "under Title 11." Therefore, the Court should apply the plain language of Section 1412 and hold that Defendants cannot invoke Section 1412 as authority for transfer.

### 3.   No Authority for Transfer Under 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  (emphasis added).  Thus, Defendants' argument that transfer is authorized under Section 1404(a) fails, because this case could <u>not</u> have been brought in the Maine District Court due to a lack of federal subject matter jurisdiction and possibly a lack of personal jurisdiction over Missouri Prime (a Missouri corporation that did business in Missouri) and Delaware Prime (a Delaware corporation).

First, there is no basis for federal question subject matter jurisdiction here.  This case involves only state law claims for breach of contract and declaratory judgment.

Second, there is no diversity of citizenship here.  NBL is a limited liability company; and, as such, its citizenship for diversity purposes is the citizenship of each of its members.  <u>OnePoint Solutions, LLC v. Borchert</u>, 486 F.3d 342, 346 (8th Cir. 2007).  NBL's sole member, National Beef Packing Company, LLC, is also a limited liability company.  Where "a member of a limited liability company may itself have multiple members — and thus may itself have multiple citizenships — the federal court needs to know the citizenship of each 'sub-member,' as well."  <u>Delay v. Rosenthal Collins Group, LLC</u>, 585 F.3d 1003, 1005 (6th Cir. 2009) (citing <u>Hicklin Eng'g L.C. v. Bartell</u>, 439 F.3d 346, 347-48 (7th Cir. 2006)).  Here, the "sub-members" of plaintiff NBL are also limited liability companies, one of which (US Premium Beef) is owned by numerous individuals, some of whom are citizens of Missouri.  Plaintiff NBL is therefore considered a citizen of Missouri, as its sub-members include citizens of Missouri.

Defendant Missouri Prime is also deemed a citizen of Missouri because it is a Missouri corporation with its former principal place of business in Missouri.  <u>See</u> 28 U.S.C. § 1332(c)(1).

Defendant Delaware Prime is a Delaware corporation and as such is deemed a citizen of Delaware and any other state where it has its principal place of business. Id.

Because both Plaintiff NBL and Defendant Missouri Prime are deemed citizens of the state of Missouri, there is not complete diversity to support the exercise of federal subject matter jurisdiction. Thus, NBL could not have brought this action in the Maine District Court. Therefore, Defendants cannot invoke Section 1404(a) to transfer this case.

    **4.**     **Factors in Determining Whether to Transfer Venue, Assuming Transfer Authority**

Even if transfer is authorized under Section 1412 or Section 1404(a), transfer is discretionary and requires consideration of convenience of the parties; convenience of the witnesses (under Section 1404(a)); and the interest of justice. Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997). A motion to transfer venue "require[s] a case-by-case evaluation of the particular circumstances at hand and . . . consideration of all relevant factors." Id.

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking transfer . . . typically bears the burden of proving that a transfer is warranted." Id. at 695. Here, Defendants have not met their burden of proving that transfer of this case to the Maine District Court is warranted.

First, this action is based on contracts that were made and executed in Missouri in relation to NBL's purchase of the Tannery and other assets located in St. Joseph, Missouri. The escrow account at issue is maintained in Missouri by an escrow agent located in Missouri.

Second, the Lawsuits and the Government Investigations giving rise to this action occurred in the State of Missouri. Consequently, the lawyers and other individuals that handled and were involved in the Lawsuits and the Government Investigations (including the lead Prime

Defendants' lawyers) will likely be witnesses in the case — and they are all located in Missouri. The extensive documents, pleadings, and discovery documents from the Lawsuits and the Government Investigations are all located in Missouri.

Third, NBL's damages, including attorney fees and costs NBL incurred in defending the Lawsuits, responding to the Government Investigations, and in altering its business plans at the Tannery, were all sustained in Missouri; and the documents and witnesses relevant to those damages are located in Missouri.

Fourth, by the express terms of the APA, the parties' claims are controlled by Missouri law and the parties have contractually agreed to litigate their claims in Missouri. "Courts have determined that a valid and applicable forum selection clause in a contract is '<u>a significant factor that figures centrally in the district court's calculus</u>'" in deciding a motion to transfer venue. <u>Terra</u>, 119 F.3d at 691.

Here, the parties have expressly agreed that the Missouri State Court is an appropriate venue and waived any challenge to venue. Section 9.2 of the APA states in relevant part:

> The parties hereby <u>irrevocably submit to the jurisdiction of the state or federal courts sitting in the State of Missouri</u> in respect of the interpretation and enforcement of the provisions of this Agreement and of the documents referred to in this Agreement, and in respect of the transactions contemplated hereby and thereby. Each of the parties irrevocably agrees that all claims in respect of the interpretation and enforcement of the provisions of this Agreement and of the documents referred to in this Agreement, and in respect of the transactions contemplated hereby and thereby, or with respect to any such action or proceeding, <u>shall be heard and determined in such a Missouri court</u>, and that such jurisdiction of such courts with respect thereto shall be exclusive, except solely to the extent that all such courts lawfully decline to exercise such jurisdiction. <u>Each of the parties hereby waives, and agree not to assert, as a defense in any action, suit or proceeding</u> for the interpretation or enforcement hereof or of any such document or in respect of any such transaction, that it is not subject to such jurisdiction. <u>Each of the parties hereby waives, and agree not to</u>

> assert, to the maximum extent permitted by law, as a defense in
> any action, suit or proceeding for the interpretation or enforcement
> hereof or of any such document or in respect of any such
> transaction, that such action, suit or proceeding may not be brought
> or is not maintainable in such courts or that the venue thereof may
> not be appropriate or that this Agreement or may [sic] such
> document may not be enforced in or by such courts.
>
> * * *

APA at § 9.2.c, attached to Defendants' Notice Of Removal (Doc. 1-3) at pp. 11-12 (emphasis

added).  Thus, Defendants' attempt to transfer this action to Maine is contrary to the APA and

the parties' agreement to litigate this dispute in Missouri.

Neither NBL's claims nor Missouri Prime's counterclaims bear any relationship to the

State of Maine.  If this Court were to order transfer, it would unfairly increase NBL's litigation

costs and allow Defendants to avoid their contractual agreements to litigate in Missouri.  These

factors show that transfer would not serve the "convenience of the parties" or witnesses; nor

would it be in the "interest of justice."

For all of the above reasons, the Court should deny Defendants' Transfer Motion.

**VII.    CONCLUSION**

For the reasons discussed above, the Court should abstain from exercising its "related to"

jurisdiction over this matter and remand this action to the State Court pursuant to the doctrine of

mandatory abstention.  Accordingly, the Court should grant NBL's Abstention/Remand Motion

and deny Defendants' Transfer Motion as moot.

In the event that the Court should determine to assert its jurisdiction over this matter,

though, it should retain that jurisdiction until this matter is resolved, in that it should decline to

transfer this action to the federal district court in Maine, in that there is no statutory authority for

transfer and, even assuming statutory authority, the factors in determining the motion weigh

against transfer.  Accordingly, in the alternative, the Court should deny Defendants' motion on the merits.

WHEREFORE, NBL respectively requests the Court to grant NBL's Abstention/Remand Motion and to deny Defendant's Transfer Motion as moot; or, in the alternative, to deny Defendants' Transfer Motion on the merits; and to grant NBL all further appropriate relief.

Date: February 3, 2011

Respectfully submitted,

/s/Kirsten A. Byrd

| | |
|---|---|
| Kirsten A. Byrd | 51479 |
| Derek T. Teeter | 59031 |
| Gavin L. Smith | 62113 |
| Benjamin F. Mann | 26892 |
| Keron A. Wright | 60537 |

Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO  64112
Telephone:  (816) 983-8000
Facsimile:  (816) 983-8000
Email:    kirsten.byrd@huschblackwell.com
            Derek.teeter@huschblackwell.com
            Gavin.Smith@huschblackwell.com
            Ben.mann@huschblackwell.com
            Keron.Wright@huschblackwell.com

**ATTORNEYS FOR PLAINTIFF, NATIONAL BEEF LEATHERS, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 3rd day of February, 2011 the foregoing **PLAINTIFF NATIONAL BEEF LEATHERS, LLC'S SUGGESTIONS IN SUPPORT OF ITS MOTION FOR MANDATORY ABSTENTION AND REMAND AND SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE** was filed electronically with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all persons listed in the Court's electronic notification system.

/s/Gavin L. Smith
Gavin L. Smith
Husch Blackwell LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112