# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| NATIONAL BEEF LEATHERS, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:11-CV-04004-NKL |
| PRIME TANNING CORPORATION, and PRIME TANNING COMPANY, INC., | ) |
| Defendants. | ) |

**ORDER**

Before the Court are the Motion to Transfer Venue [Doc. # 5] filed by Defendants Prime Tanning Company, Inc. ("Delaware Prime"), and Prime Tanning Corporation ("Missouri Prime") and the Motion for Mandatory Abstention and Remand [Doc. # 17] filed by Plaintiff National Beef Leathers, LLC ("NBL"). For the following reasons, the Court grants Plaintiff's motion and denies Defendants' motion as moot.

**I. Background**

   **A. Facts**

Plaintiff NBL's Petition in state court alleged the following facts. On February 23, 2009, Plaintiff and Defendant Missouri Prime entered into an Asset Purchase Agreement ("APA") under which NBL purchased from Missouri Prime a leather tanning facility in St. Joseph, Missouri ("the Tannery"). Within weeks of purchasing the Tannery, NBL, Missouri Prime, and others were named as defendants in a civil lawsuit. NBL and Missouri Prime

faced claims for personal injury and wrongful death from exposure to wastewater treatment sludge generated in the Tannery's operations that had been applied as fertilizer to area fields. NBL was ultimately named as a defendant in 19 civil actions involving similar allegations.

Plaintiff NBL also faced numerous requests for information by various governmental agencies. The 19 underlying lawsuits and the government investigations required NBL to collect, preserve, and produce thousands of documents related to Missouri Prime's operation of the Tannery. NBL was also forced to delay its planned renovation of the Tannery and to incur additional costs in making alternate disposal of the fertilizer sludge. Although NBL prevailed in the underlying lawsuits, it now alleges that its expenses are attributable to Missouri Prime's operation of the Tannery.

**B.   Procedure**

On September 13, 2010, NBL filed this action in the Circuit Court of Cole County, Missouri, against Missouri Prime and Delaware Prime for breach of contract and declaratory judgment. In this action, NBL alleges that under the APA, Defendants Missouri Prime and Delaware Prime are obligated to indemnify NBL for all costs that it incurred in defending the underlying lawsuits, responding to the government investigations, and altering its business plans. NBL further alleges that all such costs are "retained liabilities" under the APA because they relate to the assets, the business, and the historical operations of the Tannery. NBL alleges that Defendants' refusal to indemnify constitutes breach of the APA and related Guaranty. Missouri Prime has asserted a counterclaim against NBL for breach of contract and declaratory judgment.

NBL's alleged damages include: (1) approximately $1.5 million that NBL incurred in defending itself and approximately $80,000 that it incurred in defending a Tannery employee in the underlying lawsuits; (2) approximately $80,000 per month in past and future expenses incurred in making alternate disposal of fertilizer sludge; (3) approximately $30,000 per week in above-routine operating expenses and an additional $2.2 million per week in lost profits caused by the unanticipated delay in NBL's planned renovation of the Tannery; (4) approximately $875,000 in costs incurred in responding to the government investigations; and (5) approximately $1.1 million in costs incurred in collecting, preserving, and producing Missouri Prime documents and electronically stored information in connection with the underlying lawsuits and the government investigations. NBL seeks to recover approximately $1.5 million of the purchase price for the Tannery held by an escrow agent in Missouri under the terms of the APA and a related Escrow Agreement, in addition to money damages in excess of the Escrow Funds.

On November 16, 2010, Missouri Prime filed a Chapter 11 bankruptcy case in the U.S. Bankruptcy Court for the District of Maine. On December 30, 2010, Delaware Prime filed a Chapter 11 bankruptcy case, also in the Maine Bankruptcy Court. On January 4, 2011, Defendants filed a Notice Of Removal [Doc. # 1] in this action as well as a Motion to Transfer Venue [Doc. # 5] to the U.S. District Court for the District of Maine, for referral to the Maine Bankruptcy Court. Plaintiff NBL opposes the Motion to Transfer Venue and also filed a Motion for Mandatory Abstention and to Remand [Doc. # 17].

**II.    Discussion**

### A. Order of Analysis

Defendants do not refute the authorities cited by Plaintiff NBL regarding the order of the Court's analysis in addressing the motions now before it. The cases indicate that the Court must proceed as follows: (1) determine whether the doctrine of mandatory abstention applies under 28 U.S.C. § 1334(c)(2); (2) determine whether the action should be remanded on equitable grounds under 28 U.S.C. § 1452(b); and (3) determine whether the case should be transferred to the Maine District Court under 28 U.S.C. §§ 1412 or 1404(a). *See*, *e.g.*, *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 380 (Bankr. E.D. Ark. 2003); *AG Indust., Inc. v. AK Steel Corp.*, 279 B.R. 534, 538 (Bankr. S.D. Ohio 2002).

### B. Mandatory Abstention

Section 1334(c)(2) provides:

> Upon a timely motion of a party in a proceeding based upon a State law claim or a State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

The parties agree that each of the following elements must be present under Section 1334(c)(2): (1) a timely motion for abstention is made; (2) the claim or cause of action is based upon state law; (3) the claim or cause of action is a non-core proceeding; (4) the proceeding could not have been commenced in federal court absent jurisdiction under Section 1334; (5) the proceeding was commenced in state court; and (6) the proceeding can

4

be timely adjudicated in state court. *See*, *e.g.*, *In re Missouri Properties, Ltd.*, 211 B.R. 914, 920 (Bankr. W.D. Mo. 1996); *In re Arctic Enterprises, Inc*., 68 B.R. 71, 77 n.5 (D. Minn. 1986). Defendants contest only the third and sixth requirements – i.e., whether this action constitutes a core bankruptcy proceeding and whether the proceeding can be timely adjudicated in state court. After reviewing the other four elements under Section 1334(c)(2), the Court concludes that they are each met: the Plaintiff filed a timely motion for abstention, their claims are based on state contract law, there is no separate ground for federal jurisdiction, and the proceeding was commenced in state court prior to removal.

1. **"Core" versus "Non-Core" Proceeding**

Section 1334(c)(2) provides that mandatory abstention applies only where the proceeding is "related to a case under title 11 but not arising under title 11 or arising in a case under title 11 . . . ." 28 U.S.C. § 1334(c)(2). Courts have interpreted the language of Section 1334(c)(2) as providing that mandatory abstention does not apply to "core" bankruptcy proceedings. *In re Williams*, 256 B.R. 885, 893 n.4 (8th Cir. B.A.P. 2001); *In re Refco, Inc*. 354 B.R. 515, 521 (8th Cir. B.A.P. 2006).

> The U.S. Bankruptcy Appellate Panel of the Eighth Circuit has explained:
>
> Core proceedings consist of "any or all proceedings arising under title 11 or arising in a case under title 11." 28 U.S.C. § 157(b). The phrase "arising under" applies to proceedings that involve causes of action expressly created or determined by title 11, such as causes of action to recover fraudulent conveyances and preferential transfers, section 544 avoidance actions, dischargeability proceedings, and similar rights that would not exist had there been no bankruptcy. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 773 (8th Cir.1995). . . . The phrase "arising in" generally refers to administrative matters that, although not expressly created by title 11, would

5

> have no existence but for the fact that a bankruptcy case was filed. *In re Menk*, 241 B.R. 896, 909 (9th Cir. B.A.P. 1999).
>
> . . .
>
> Non-core, related proceedings are civil proceedings which do not invoke a substantive right created by bankruptcy but nonetheless fall within the jurisdiction of the bankruptcy court because they share a nexus with the bankruptcy case and will have some "conceivable effect" on the administration of the debtor's estate. *In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir.1987); *Specialty Mills*, 51 F.3d at 773.

*In re Williams*, 256 B.R. at 891; *see also In re Refco*, 354 B.R. at 521.

Following the guidance of the Eighth Circuit Bankruptcy Appellate Panel, it is not difficult to classify the proceeding now before the Court. Plaintiff NBL's breach of contract action does not assert any right that would not exist had there been no bankruptcy, nor are they administrative matters that would have no existence but for the fact that a bankruptcy case was filed. Rather, this action is a civil proceeding that does not invoke a substantive right created by bankruptcy but that does share a nexus with the bankruptcy case and will have some effect on the administration of the debtor's estate. Therefore, this action is a non-core, related proceeding. Indeed, Plaintiff NBL cites a line of cases holding that pre-petition contract claims are non-core proceedings. *See*, *e.g.*, *In re Delaware & Hudson Ry. Co.*, 122 B.R. 887, 894 (D. Del. 1991) ("The state law claims at issue . . . existed prior to and independent of the filing of the instant bankruptcy, and the Court concludes that under these circumstances the . . . lawsuit is a non-core proceeding . . . ."); *In re Daley*, 224 B.R. 307, 313 (Bankr. S.D. N.Y. 1998) ("[C]laims whose genesis is unrelated to the bankruptcy case, that is, those which are rooted in the pre-bankruptcy past and are brought under

6

non-bankruptcy law, do not arise under Title 11 or in a case under Title 11, but are at best non-core and, then, only if there is a basis for the assertion of 'related to' jurisdiction.").

In response, Defendants suggest that some courts "have concluded that matters requiring a declaration of whether certain property comes within the definition of 'property of the estate' . . . are core proceedings." *In re Touch America Holdings, Inc*., 401 B.R. 107, 117 (Bank. D. Del. 2009). Such a conclusion would not necessarily be at odds with the Eighth Circuit rule, as long as the property determination is made pursuant to a right of action expressly created or determined by title 11. Regardless, this Court declines to follow the guidance of a Delaware Bankruptcy Court rather than the Eighth Circuit Bankruptcy Appellate Panel.

In their most recent brief, Defendants focus on the argument that this action "will be a core proceeding upon NBL filing a proof of claim" against the bankruptcy estate. [Doc. # 24 at 5.] Defendants again cite to caselaw from other circuits, this time indicating that some courts have refused to decide whether a state court suit is core or non-core until it can be determined whether a proof of claim would be filed. *Id.* at 7 (citing *Chadwick Bay Hotel Assocs. v. City of Dunkirk, New York*, 178 B.R. 618 (Bankr. W.D. N.Y. 1995)). While conceding that Plaintiff NBL has not yet filed a proof of claim, Defendants reason that NBL's claims against the bankruptcy estate will be barred if it fails to do so.

Even if the Court were persuaded that the question of whether this pre-petition state law contract action is a "core" bankruptcy proceeding hinged on the proof of claim formality, the Court must decide this motion based on the present record. *See Lennar Corp. v.*

7

*Briarwood Capital LLC*, 430 B.R. 253, 265 (Bankr. S.D. Fla. 2010) ("In looking at the core versus non-core nature of the removed case, the Court must look solely to the present record, not what may or may not happen in the Bankruptcy Cases."); *In re Asousa Partnership*, 264 B.R. 376 (Bankr. E.D. Pa.2001) (holding that removed action was not core proceeding while acknowledging that a proof of claim may ultimately be filed); *see also Mid-Atlantic Handling Systems, LLC v. Mitsubishi Caterpillar Forklift America, Inc*., 304 B.R. 111, 124 (Bankr. D. N.J. 2003) ("[T]he filing of the proof of claim with its reservation of rights does not transform Maintainco's pre-petition state law claims into a core proceeding . . . .").

Moreover, the Court declines to speculate on the merits of Plaintiff's claims by assuming that the escrow funds are a part of Missouri Prime's bankruptcy estate. If the terms of the APA in fact prohibit the third-party escrow from delivering the funds to Missouri Prime and instead provide that they are the property of Plaintiff NBL, then Missouri Prime would have never obtained more than a contingent right in the funds at issue – extinguishable upon the application of Missouri contract law. *See In re Newcomb*, 744 F.2d 621, 627 (8th Cir. 1984) (contingent right created upon creation of escrow); *In re NTA, LLC*, 380 F.3d 523 (1st Cir. 2004) (holding that primary assets of debtor, placed in escrow pre-petition were not part of Chapter 11 bankruptcy estate and were properly distributed from escrow account under Illinois law).

For the reasons stated above, this state law contract action is a non-core proceeding.

    **2.**    **Timely Adjudication in State Court**

The only remaining issue in dispute regarding Plaintiff's Motion for Abstention is whether the action "can be timely adjudicated" in state court. 28 U.S.C. § 1334(c)(2). The parties cite scattered cases which look to a variety of factors in making this determination. The authorities indicate that timeliness is determined with respect to the needs of the title 11 case rather than by reference to the relative speed with which the state and federal court can be expected to proceed. *Stoe v. Flaherty*, 436 F.3d 209, 219-20 (3rd Cir. 2006) (citation omitted). The Court finds helpful the factors laid out by the Tenth Circuit Bankruptcy Appellate Panel:

> (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed (i.e., whether discovery had been commenced); (3) status of the proceeding in the bankruptcy court; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the underlying bankruptcy case is a reorganization or liquidation case.

*In re Midgard Corp.*, 204 B.R. 764, 778-79 (10th Cir. B.A.P. 1997) (citations omitted).

Here, an analysis of these factors indicates that this action can be timely adjudicated in state court. No evidence has been presented regarding any judicial backlogs. The state court petition was filed on September 13, 2010. On November 2, Missouri Prime filed its answer, with affirmative defenses and counterclaims, also in the Circuit Court of Cole County, Missouri. Plaintiff NBL filed a motion for a more definite statement on November 10, 2010, and its answer to Missouri Prime's counterclaims on December 2. Missouri Prime filed an amended answer on December 21.

9

Thus, although there is no evidence that discovery had progressed before the January 4, 2011 removal to federal court, there had been substantial development in the case at the state level even before Defendants filed for bankruptcy in November and December of 2010. It appears that the recently initiated bankruptcy proceedings in Maine remain in their early stages. Additionally, the state law contractual issues are not highly complex, especially in comparison to Chapter 11 proceedings involving multiple business entities. Furthermore, while the Prime Tanning entities are undergoing reorganization as a whole, Defendants acknowledge that Missouri Prime's "liquidation cannot commence until the assets and liabilities of the Defendants are determined" in this action. [Doc. # 23 at 14.] Because Missouri Prime's assets – planned for mere liquidation – are at the center of this action, the time pressures do not appear to be acute. Finally, Plaintiff NBL does assert a right to a jury trial and does not consent to the jurisdiction of the bankruptcy court. These factors also indicate that the action can be timely adjudicated in state court.

For the reasons stated above, the Court finds that the doctrine of mandatory abstention applies and that it lacks subject matter jurisdiction over this non-core, state law contract claim.

### C. Equitable Remand

Even if the Court did not find mandatory abstention, it would still remand the case on equitable grounds under Section 1452(b). That statute provides that the court to which a claim related to a bankruptcy case has been removed "may remand such claim or cause of

action on any equitable ground." 28 U.S.C. § 1452(b). The courts have developed a number of factors that may be considered in determining whether such abstention is appropriate:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core proceeding"; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden [on] the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

*In re Refco*, 354 B.R. at 522 n.30 (citing *In re Williams*, 256 B.R. at 894). To some extent, these factors overlap with those considered above.

In exercising its discretion here, the Court notes that the state law contract claim is easily severable from core bankruptcy matters and bears little substantive relation to the issues that will dominate the bankruptcy proceedings. The Court also notes that both the facts and law in this case are centered in Missouri, where Plaintiff NBL enjoys a right to a jury trial. In sum, the Court determines that the most efficient and equitable means of resolving this Missouri-based dispute is by trying the case in a Missouri state court. Therefore, this case is remanded to the Circuit Court of Cole County.

Having found that it lacks subject matter jurisdiction, and alternatively that the case should be remanded on equitable grounds, the Court finds mooted Defendants' Motion to Transfer Venue.

**III. Conclusion**

Accordingly, it is hereby ORDERED that Plaintiff NBL's Motion for Mandatory Abstention and Remand [Doc. # 17] is GRANTED, and Defendants Missouri Prime and Delaware Prime's Motion to Transfer Venue [Doc. # 5] is DENIED as moot.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 28, 2011
Jefferson City, Missouri